UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CAROL F.,                                    ) Case No. CV 19-7040-SP
                                             )
                Plaintiff,                   )
                                             )
        v.                                   ) MEMORANDUM OPINION AND
                                             ) ORDER
ANDREW M. SAUL, Commissioner of              )
Social Security Administration,              )
                                             )
                Defendant.                   )
_____ )

**I.**

**INTRODUCTION**

On August 13, 2019, plaintiff Carol F. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly rejected the opinion of a treating physician; and (2) whether the ALJ properly rejected plaintiff's subjective

1

symptom testimony.  Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 1-27; *see* Defendant's Memorandum in Support of Answer ("D. Mem.") at 6-25.

Having carefully studied the parties' papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, while the ALJ properly rejected the opinion of plaintiff's treating physician, the ALJ failed to properly consider plaintiff's subjective symptom testimony.  The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was 58 years old on her alleged disability onset date.  AR 55.  She has a high school education and past relevant work as a customer service representative in the insurance industry and at a car dealer, and as a retail cashier. *Id.* at 51-52.

On June 8, 2016, plaintiff filed an application for disability and DIB, alleging disability beginning April 5, 2015 due to degenerative disc disease and spinal stenosis.  *Id.* at 55-56, 63.  The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing.  *Id.* at 55-63, 64-74, 78-91.

On April 23, 2018, plaintiff, represented by counsel, appeared and testified a hearing before the ALJ.  *Id.* at 32-51.  The ALJ also heard testimony from Sharon Spaventa, a vocational expert ("VE").  *Id.* at 48-53.  On July 26, 2018, the ALJ denied plaintiff's claim for benefits.  *Id.* at 16-24.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since April 5, 2015, the alleged onset date.  *Id.* at 18.

At step two, the ALJ found plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine; left knee degenerative joint disease; and obesity. *Id.* at 19.

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.*

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined that plaintiff had the RFC to perform sedentary work with the limitations that she could: stand and walk for four hours in an eight-hour workday; sit for about six hours in an eight-hour workday; and is limited to occasional postural limitations. *Id.*

The ALJ found, at step four that plaintiff was able to perform her past relevant work as a customer service representative in the insurance industry both as she actually performed it and as generally performed. *Id.* at 23. Consequently, the ALJ concluded plaintiff was not disabled. *Id.* at 24.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-6, 210-17. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security

---

[1]   Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

3

1  Administration must be upheld if they are free of legal error and supported by

2  substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

3  (as amended).  But if the court determines the ALJ's findings are based on legal

4  error or are not supported by substantial evidence in the record, the court may

5  reject the findings and set aside the decision to deny benefits.  *Aukland v.*

6  *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

7  1144, 1147 (9th Cir. 2001).

8      "Substantial evidence is more than a mere scintilla, but less than a

9  preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

10  "relevant evidence which a reasonable person might accept as adequate to support

11  a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

12  F.3d at 459.  To determine whether substantial evidence supports the ALJ's

13  finding, the reviewing court must review the administrative record as a whole,

14  "weighing both the evidence that supports and the evidence that detracts from the

15  ALJ's conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

16  affirmed simply by isolating a specific quantum of supporting evidence.'"

17  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

18  Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

19  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

20  of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

21  1992)).

22                                      **IV.**

23                                  **DISCUSSION**

24  **A.    The ALJ Properly Rejected the Opinion of Plaintiff's Treating**

25       **Physician**

26       Plaintiff argues the ALJ erred by rejecting the opinion of her treating

27  physician, Dr. Lisabeth Carlisle.  P. Mem. at 1-19.  Specifically, plaintiff contends

28

the ALJ failed to provide legally sufficient reasons for rejecting her opinion.  *Id.*

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence.  20 C.F.R. §§ 404.1527(b), 416.927(b).[2]  In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians.  20 C.F.R.          §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.027(c)(1)-(2).  The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician.  *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight.  *Lester*, 81 F.3d at 830.  If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it.  *Id.*  Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians.  *Id.* at 830-31.  The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence.  *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v.*

---

[2]   All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

*Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

### 1.   **The Medical Opinions and Records**

#### a.   **Treating Physician**

Dr. Lisabeth Carlisle, plaintiff's treating physician, treated plaintiff twice a year for three years for chronic pain, anxiety, Supraventricular Tachycardia ("SVT"), Vitamin D deficiency, rosacea, and obesity. AR at 713. With respect to plaintiff's chronic pain, she was referred to the Spanish Hills Interventional Pain Specialists for treatment. *See id.* at 713, 478-709.

Dr. Carlisle completed a Treating Source Statement on March 2, 2018. *Id.* at 713-16. Based on plaintiff's medical history, physical examination, an MRI, and pain management records, Dr. Carlisle opined that plaintiff had the following functional limitations, among other: she could occasionally lift and carry up to ten pounds; she could sit for three hours and stand or walk for two hours in an eight-hour workday; and she needed the option to sit and stand at will. *Id.* at 714. Dr. Carlisle also opined that if plaintiff was trying to work full time, she would likely be absent more than four days a month. *Id.* at 713.

#### b.   **State Agency Physicians**

On September 8, 2016, Dr. J. Hartman, a state agency physician, completed a Physical Residual Functional Capacity Assessment. *Id.* at 59-60. After reviewing the medical evidence on file, Dr. Hartman opined that plaintiff could lift and carry ten pounds occasionally and frequently; she could stand and walk for four hours and sit for six hours in an eight-hour workday; and although she could not climb ladders, ropes, or scaffolds, she could occasionally perform all other postural activities. *Id.*

On December 1, 2016, Dr. M. Gleason, a state agency physician, concurred in Dr. Hartman's assessment based on his review of updated records. *Id.* at 70-71.

### 2.    The ALJ's Findings

The ALJ determined plaintiff had the RFC to perform sedentary work, with the limitations that she could stand and walk for four hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and she is limited to occasional postural limitations.  *Id.* at 19.

In reaching this RFC determination, the ALJ gave great weight to the opinions of state agency physicians Drs. Hartman and Gleason, finding that their opinions were consistent with the overall medical evidence.  *See id.* at 22. The ALJ gave little weight to the medical opinion of treating physician Dr. Carlisle on the basis that her opinion appeared to be based primarily on plaintiff's subjective statements and not on the overall objective medical evidence.  *Id.*  In addition, the ALJ explained that Dr. Carlisle's opinion was wholly inconsistent with the treatment records, which show that plaintiff has consistently improved with treatment, to the point that she has been working part-time for over a year.  *Id.*  The ALJ further explained that there is no attached objective medical evidence to support Dr. Carlisle's extreme medical opinion, and she only sees plaintiff on a biannual basis and does not treat her lower back pain.

### 3.    The ALJ Properly Rejected Dr. Carlisle's Opinion

Where a treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it.  *Lester*, 81 F.3d at 830.  Here, although plaintiff appears to characterize Dr. Carlisle's opinion as uncontroverted, her opinion that plaintiff could only sit for three hours and stand and walk for two hours in an eight-hour workday is contradicted by the opinions of state agency physicians Drs. Hartman and Gleason, who opined that plaintiff could stand and walk for four hours and sit for six hours in an eight-hour workday.  *Compare* AR at 714 *with* 59-60, 70-71. Thus, the ALJ was required to provide specific and legitimate reasons supported by

1  substantial evidence for rejecting Dr. Carlisle's opinion.

2         The ALJ's first reason for rejecting Dr. Carlisle's opinion was that it was

3  based primarily on plaintiff's subjective statements, and not on the overall

4  objective medical evidence.  *Id.* at 22.  The ALJ also rejected her opinion, because

5  the objective medical evidence was not attached to her report.  *Id.*  But as to the

6  lack of attached evidence, Dr. Carlisle indicated that in addition to relying on

7  plaintiff's reported history to determine plaintiff's functional limitations, she also

8  relied on objective medical evidence, including a physical examination, plaintiff's

9  pain management records, and an MRI of plaintiff's lumbar spine.  *See id.* at 714-

10  15.  Specifically, Dr. Carlisle referenced a 2015 lumbar MRI, which showed a disc

11  protrusion that narrowed the L2-3 neural foramen and impinged on the existing

12  nerve root.  *Id.* at 252-53, 306.  Additionally, the MRI indicated moderate

13  degenerative joint disease of the facet joints on the left, mild central spinal canal

14  stenosis, and at L3-4, moderate degenerative joint disease of the facet joints

15  bilaterally.  *Id.* at 253, 306.  A physical examination of plaintiff also revealed

16  palpation and tenderness at L3-L4, tenderness to palpation of paraspinals, reduced

17  range of motion, positive straight leg raising on the left lateral thigh, antalgic gait,

18  limited lumbar extension with tenderness over the lumbosacral facets bilaterally,

19  abnormal heel and toe walking, and decreased left sensation at L2 and L3.  *Id.* at

20  323-24.  On further examination relating to plaintiff's left knee and sacroiliac (SI)

21  joint pain, there were various other positive findings, including limited range of

22  motion, positive McCurray sign, painful patellofemoral crepitus, Fortin's sign,

23  Yeoman's sign, Patrick's sign, and Gainslen's signs.  *See, e.g.*, 302-03, 295-96,

24  288-89, 281-82, 381-82, 373-74, 365-66, 633-35, 642-43, 658-59, 666-67, 674-77,

25  682-83, 690-91, 698-99, 706-07, 787-78.  Based on the evidence in the record, it

26  appears that Dr. Carlisle's opinion was based on objective medical evidence, rather

27  than just plaintiff's subjective statements.  As such, insofar as the ALJ discounted

28

Dr. Carlisle's opinion because it was based primarily on plaintiff's subjective complaints and the objective medical evidence was not attached to her report, these were not specific and legitimate reasons for rejecting her opinion. *See Arevalo v. Colvin*, 2013 WL 1314008, *at 6 (C.D. Cal. March 29, 2013) (finding that ALJ erred by rejecting treating physician's opinion, which was based both on plaintiff's subjective complaints and on medical evidence).

Nonetheless, the ALJ properly discounted Dr. Carlisle's opinion regarding plaintiff's severe functional limitations on the basis that it was inconsistent with the overall record, which demonstrated plaintiff's consistent improvement with treatment to the point that she had been working part-time for over a year. *See* AR at 22; *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that an ALJ may discredit physicians' opinions that are "unsupported by the record as a whole . . . or by objective medical findings"). In particular, plaintiff's treatment notes indicate that her medications provided significant pain reduction, including pain levels as low as 2/10 and 3/10 for significant periods of time. *See id.* at 271, 279, 285, 292, 299, 307, 314, 328, 363, 371, 631, 639, 647, 655, 663, 671. The record also indicates that her medication provided "optimal pain relief and function." *See id.* at 291, 298, 305, 312, 333. Additionally, her treatment notes consistently demonstrate that the medications kept plaintiff functional, and increased her mobility and tolerance of activities of daily living and exercise without any side effects. *See id.* at 271, 279, 285, 292, 299, 307, 314, 328, 363, 371, 631, 639, 647, 655, 663, 671, 703, 784. Further, the ALJ acknowledged that plaintiff had received numerous pain relieving procedures, but pointed out that they provided her with significant pain relief and functional improvement with decreased medication requirements. *See id.* at 22 (citing AR at 702-03). Notably, plaintiff obtained greater than 70% pain relief and functional improvement from an SI joint injection in September 2015; 80-85% relief and functional improvement with the

left lumbar facet injection in May and August 2016; 75-80% relief and functional improvement with radiofrequency neurotomies in October 2016; 70% relief and functional improvement with left SI joint injection in January 2017; greater than 90% relief and functional improvement with knee injection in June 2017; 80% relief with left SI injection in October 2017; and 90% relief from left knee injection in March 2018. *See, e.g., id.* at 285, 376, 631, 639, 671, 701, 702-03, 784. Thus, the inconsistency between Dr. Carlisle's severe functional limitations and the overall treatment records, which showed plaintiff's consistent improvement with treatment, was a specific and legitimate reason to discount her opinion.

Plaintiff argues the ALJ erred in finding the overall record showed "a pattern of consistent improvement with conservative pain management modalities." P. Mem. at 14-15. Specifically, plaintiff disputes the ALJ's characterization of plaintiff's treatment as "conservative." *Id.* But as discussed above, this finding was supported by substantial evidence given that plaintiff's treatment records repeatedly documented that the medications significantly reduced her pain levels, and increased her mobility and tolerance of activities of daily living and exercise. *See* AR at 271, 279, 285, 292, 299, 307, 314, 328, 371, 363, 631, 639, 647, 655, 663, 671, 703, 784. Likewise, the injections provided plaintiff with significant pain relief and functional improvement from 2014 to 2018. *See id.* at 285, 299, 376, 639, 671, 703, 784. Because the treatment records showed that the medications and injections significantly reduced plaintiff's pain and improved her function, the ALJ's finding that plaintiff's treatment as a whole was conservative was reasonable. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [social security] benefits."); *Fry v. Berryhill*, 749 Fed. App'x 659, 660-61 (9th Cir. 2019) (rejecting argument that the ALJ erred in characterizing claimant's treatment of injections

and cervical fusion surgery as "conservative," where the evidence showed improvement with treatment).

Plaintiff contends the ALJ lacked any medical opinion from which he could conclude that Dr. Carlisle's opinion was inconsistent with the overall record and its showing that plaintiff continued to improve, because the state agency physicians rendered their opinions in 2016 and therefore were unable to consider the additional medical records from December 2016 to March 2018 considered by Dr. Carlisle. P. Mem. at 15; Reply at 2. It is true that an ALJ may not act as his own medical expert, since he is "simply not qualified to interpret raw medical data in functional terms." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *see Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (hearing examiner should not go outside the record to medical textbooks to make his "own exploration and assessment" as to a claimant's impairments); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *Miller v. Astrue*, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) (it is improper for the ALJ to act as the medical expert); *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (ALJ is not qualified to extrapolate functional limitations from raw medical data). But that is not what the ALJ did here. Instead, the ALJ gave great weight to the state agency physicians' opinions, which the ALJ found to be consistent with the overall medical evidence, including medical evidence subsequent to their opinions, which the ALJ reviewed and found showed a continuing pattern of improvement. *See* AR at 22. Ultimately, a claimant's RFC is a matter for the ALJ to determine. 20 C.F.R. § 404.1546(c); *see Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ . . . to determine residual functional capacity."). The ALJ was not required to obtain another medical opinion regarding the evidence not reviewed by the state agency physicians when

he found their opinions consistent with that later evidence.  *See Owen v. Saul*, 808

Fed. Appx. 421, 423 (9th Cir. 2020) (no error in giving great weight to opinions of

state agency physicians who did not review later evidence; "there is always some

time lapse between a consultant's report and the ALJ hearing and decision").

Plaintiff also argues the ALJ erred in rejecting Dr. Carlisle's opinion on the

grounds that she did not treat plaintiff's lower back pain and only saw plaintiff on a

biannual basis.  *See* P. Mem. at 10-11 (citing AR 22).  But contrary to plaintiff's

assertion, the ALJ properly considered the nature and extent of Dr. Carlisle's

treatment relationship with plaintiff in determining what weight to give her

opinion.  *See* 20 C.F.R. § 404.1527(c)(2)(i)-(ii) (factors for evaluating treatment

relationship include the length and the nature and extent of the treatment

relationship).  The ALJ correctly noted that Dr. Carlisle only saw plaintiff

biannually.  *See* AR at 22, 713.  Additionally, although Dr. Carlisle occasionally

provided clearance for plaintiff's injections (*see id.* at 419-29), her lower back pain

was primarily treated at the pain management clinic.  As such, the ALJ properly

discounted Dr. Carlisle's opinion on the basis that she saw plaintiff only a limited

number of times and did not primarily treat plaintiff's lower back pain.

Plaintiff further argues that Dr. Carlisle's opinion is not inconsistent with

plaintiff's ability to work part-time after her alleged disability onset date.  *See* P.

Mem. at 17-19.  Plaintiff secured a part-time job at a post office beginning in

January 2017 and continuing at least through the time of the April 2018 hearing.

*Id.* at 32, 33.  Plaintiff testified that she was working for four hours a day, five days

a week, and informed her employer about her limitations, including that she "can't

sit and stand for any long-extended periods of time," and her employer

accommodated those limitations.  *Id.* at 35.  Plaintiff also testified that if she

needed to walk off or walk away due to any pain, then she would ask her coworker

to cover for her while she stepped outside.  *Id.* at 45-46.  Dr. Carlisle opined that

1    plaintiff could only sit for three hours and stand and walk for no more than two

2    hours in an eight-hour workday, and she needed the option to sit and stand at will.

3    *See* AR at 713-14.  Based on plaintiff's testimony, there are no apparent

4    inconsistencies between Dr. Carlisle's opinion limiting her to a five-hour workday

5    and plaintiff's testimony that she worked four hours a day with accommodations.

6    As such, plaintiff's ability to work a part-time job after her alleged disability onset

7    date was not a specific and legitimate reason to discount Dr. Carlisle's opinion.

8            Accordingly, while Dr. Carlisle's opinion appears to rely on objective

9    medical evidence in addition to plaintiff's subjective complaints, and there were no

10   apparent inconsistencies between her opinion and plaintiff's part-time job, the ALJ

11   provided other specific and legitimate reasons for discounting Dr. Carlisle's

12   opinion.

13   **B.**   **The ALJ Failed to Provide Clear and Convincing Reasons for**

14          **Discounting Plaintiff's Testimony**

15           Plaintiff also argues the ALJ failed to provide clear and convincing reasons

16   to discount plaintiff's subjective symptom testimony.  *See* P. Mem. at 20-27.

17           The court looks to Social Security Ruling ("SSR") 16-3p for guidance in

18   evaluating plaintiff's alleged symptoms.  SSR 16-3p rescinded and superseded

19   SSR 96-7p and applies to decisions made on or after March 28, 2016.  SSR 16-3p,

20   2017 WL 5180304, at *1 (Oct. 25, 2017).  "Although SSRs do not have the same

21   force and effect as statutes or regulations, they are binding on all components of

22   the Social Security Administration."  *Id.* (citing 20 C.F.R. § 402.35(b)(1)).

23           In adopting SSR 16-3p, the Social Security Administration sought to "clarify

24   that subjective symptom evaluation is not an examination of an individual's

25   character."  *Id.* at *2.

26           [SSR 16-3p] makes clear what our precedent already required: that

27           assessments of an individual's testimony by an ALJ are designed to

28

13

evaluate the intensity and persistence of symptoms after the ALJ finds
that the individual has a medically determinable impairment(s) that
could reasonably be expected to produce those symptoms, and not to
delve into wide-ranging scrutiny of the claimant's character and
apparent truthfulness.

*Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (internal quotation
marks and alterations omitted).

To evaluate a claimant's symptom testimony, the ALJ engages in a two-step
analysis. *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (quoting
*Trevizo*, 871 F.3d at 678). First, the ALJ must determine whether the claimant
produced objective medical evidence of an underlying impairment that could
reasonably be expected to produce the symptoms alleged. *Id.* Second, if the
claimant satisfies the first step, and there is no evidence of malingering, the ALJ
must evaluate the intensity and persistence of the claimant's symptoms and
determine the extent to which they limit her ability to perform work-related
activities. *Id.* In assessing intensity and persistence, the ALJ may consider: a
claimant's daily activities; the location, duration, frequency, and intensity of the
symptoms; precipitating and aggravating factors; the type, dosage, effectiveness,
and side effects of medication taken to alleviate the symptoms; other treatment
received; other measures used to relieve the symptoms; and other factors
concerning the claimant's functional limitations and restrictions due to the
symptoms. *Id.* (citing 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *4;
*Smolen*, 80 F.3d at 1283-84 & n.8). If the ALJ rejects the claimant's subjective
symptom statements at step two, the ALJ must provide "specific, clear, and
convincing" reasons, supported by substantial evidence in the record, for doing so.
*Id.* at 921, 929. The ALJ must also "specifically identify the testimony [from the
claimant] that she or he finds not to be credible and . . . explain what evidence

undermines the testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Holohan*, 246 F.3d at 1208).

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged.  AR at 21.  At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's testimony.  The ALJ discounted plaintiff's testimony because plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical evidence of record and other evidence in the record.  *Id.*  In particular, the ALJ discounted plaintiff's subjective testimony, because: (1) her allegations regarding her physical impairments were inconsistent with the reported and objective medical evidence, including her ability to work for almost two years with the "same" back problem and work part-time for the last 16 months; (2) the medical evidence shows a pattern of consistent improvement with conservative pain management modalities; and (3) she performed activities of daily living consistent with the RFC and inconsistent with her testimony.  *See id.* at 21-23.

As an initial matter, plaintiff contends the ALJ failed to identify which testimony he discounted, and why.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (ALJ erred where she "never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony").  Here, the ALJ did identify testimony he considered and discounted. The ALJ pointed to plaintiff's testimony regarding her back issues that started in 2013 and persisted such that could not work more than four hours a day due to her back pain and her need to lie down after working four hours.  AR at 20.  But the ALJ did not mention plaintiff's testimony that her back pain also results in her inability to sit or stand for more than 15 minutes at a time, although the ALJ

appears to have rejected this testimony since such limitation was not included in her RFC.  *See* AR at 19, 37-38.

The ALJ's first reason for discounting plaintiff's subjective testimony was that it was inconsistent with the reported and objective medical evidence.  *Id.* at 21. Specifically, the ALJ pointed out that plaintiff worked for almost two years with "the same back problem" that she currently has, and has been able to work for about the last 16 months part-time.  *Id.*  Although plaintiff's onset of back pain was around 2012, plaintiff testified that her condition had "gotten worse" over time. *See id.* at 39-40.  Indeed, in May 2015, after plaintiff's alleged disability onset date, her pain management physician indicated that plaintiff had "taken a turn for the worse" with respect to her left lower extremity, and had increased lower back pain with numbness, tingling, and weakness in the quadriceps.  *See id.* at 326, 333. Additionally, as discussed above, a 2015 MRI of plaintiff's lumbar spine revealed that her condition had declined to the point where there was nerve root impingement and moderate degenerative joint disease of the facet joints.  *Id.* at 252-53, 306.  Further, beginning in August 2015, plaintiff began experiencing SI joint pain, with positive objective clinical signs noted regularly throughout the record.  *See*, *e.g.*, *id.* at 302-03, 295-96, 288-89, 281-82, 381-82, 373-74, 365-66, 633-35, 642-43, 658-59, 666-67, 674-77, 682-83, 690-91, 698-99, 706-07, 787-78. As such, because the more recent evidence indicates that plaintiff's back pain had worsened over time, the ALJ's finding that plaintiff had worked with "the same back problem" previously was not a clear and convincing reason to discount her subjective testimony.

Similarly, the ALJ rejected plaintiff's subjective testimony because she was able to work part-time for over a year after her alleged disability onset date.  *See id.* at 21.  "To meet the clear and convincing standard, the ALJ would have to link plaintiff's part-time work with her ability to sustain full-time work."  *Kovalenko v.*

1   *Comm. of Soc. Sec.*, 2019 WL 3714567, *11 (E.D. Cal. August 7, 2019).  The ALJ

2   fails to do so here.  As discussed above, plaintiff's part-time work was not

3   inconsistent with the description of her symptoms and limitations.  The ALJ

4   acknowledged that plaintiff only worked four hours a day, and that she testified she

5   cannot work more than four hours due to back pain and the need to lie down after

6   four hours.  *See id.* at 20.  But the ALJ failed to properly consider plaintiff's

7   testimony that her part-time job accommodated her limitations that she "can't sit

8   and stand for any long-extended periods of time," namely, not more than 15

9   minutes at a time.  *See id.* at 35, 37-38, 45-46.  Plaintiff further testified that she

10  does not know how long the employer will continue to accommodate her, since it

11  is hard on the other employees, and she has been advised that her employment

12  status "might have to be changed."  *Id.* at 34, 45.  The vocational expert also

13  testified that there would be no work available if plaintiff needed a two-hour break

14  after four hours of work, or if she needed to walk away for two to three minutes

15  after every 15 minutes of work.  *Id.* at 52-53.  The ALJ fails to explain how

16  plaintiff's part-time job with such limitations is inconsistent with plaintiff's alleged

17  inability to sustain full-time work, and thus her part-time job is not a clear and

18  convincing reason to discount her testimony.  *See Kovalenko*, 2019 WL 3714567,

19  at 11 ("[T]he mere fact that plaintiff worked part-time, without more, is not a clear

20  and convincing reason to disregard her testimony.").

21        The ALJ also discounted plaintiff's testimony because the medical evidence

22  showed a pattern of consistent improvement with conservative pain management

23  modalities.  *See* AR at 21; *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)

24  ("[E]vidence of conservative treatment is sufficient to discount a claimant's

25  testimony regarding severity of an impairment.").  As noted above, the treatment

26  records overall consistently demonstrate that plaintiff experienced significant pain

27  relief, functional improvement, and increased mobility and tolerance for activities

28

of daily living and exercise due to her medications and injections. *See id.* at 271, 279, 285, 292, 299, 307, 314, 328, 371, 363, 631, 639, 647, 655, 663, 671, 703; *Garza v. Colvin*, 2016 WL 7391507, at *12-13 (C.D. Cal. Dec. 21, 2016) (ALJ reasonably found the claimant's history of conservative treatment was inconsistent with the alleged severity of his symptoms where he declined knee surgery, and relied on pain medication and cortisone injections); *Walter v. Astrue*, 2011 WL 1326529, at *3 (C.D. Cal. April 6, 2011) (ALJ properly discounted claimant's allegations based on conservative treatment consisting of Vicodin, physical therapy, and an injection); *see also Fry*, 749 Fed. App'x at 660-61. As such, the improvement of plaintiff's symptoms due to her prescription medications and injections was a clear and convincing reason to discount her testimony regarding the alleged severity of her physical impairments.

The ALJ additionally rejected plaintiff's subjective testimony on the ground that her activities of daily living were inconsistent with the alleged severity of her impairments. *See* AR at 23. Specifically, the ALJ noted that plaintiff lives with her boyfriend, she can drive a car, she can perform some household chores but with some difficulty, and she has been working part-time for over a year. *Id.* at 20, 23. The ALJ also noted that plaintiff can lift grocery bags, shops once or twice a week, cleans her house with the help of family members, and sleeps for about four to five hours a night. *Id.* at 20. While the ALJ indicates that these daily activities reveal someone who is not constantly in pain and is capable of some level of work, it is unclear how such activities are inconsistent with plaintiff's allegations that she is unable to walk, stand, or sit for extended periods of time. *See id.* at 35, 37-38. Rather, plaintiff's testimony regarding her activities of daily living appears to reinforce her limitations. For example, plaintiff testified that she lives with her boyfriend in a one level apartment, since she could not handle the stairs at her previous two-story condo. *See id.* at 43. Likewise, plaintiff testified that driving is

an issue, and she cannot drive for long distances. *Id.* at 45.  She also testified that household chores are inconvenient, and she receives accommodations for sitting and standing at work. *See id.* at 45-46.  Plaintiff's ability to perform various daily activities therefore do not amount to a clear and convincing reason to discount her testimony since it is unclear how they contradict her testimony regarding the alleged severity of her impairments. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (The Ninth Circuit has repeatedly asserted that the "mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability.") (citation omitted).

In sum, there were no apparent inconsistencies between plaintiff's subjective testimony, plaintiff's ability to perform her previous job and work part-time, and plaintiff's various daily activities.  But the ALJ set forth one clear and convincing reason for discounting plaintiff's testimony given that plaintiff's impairments were effectively controlled through conservative treatment and her testimony regarding the intensity and limiting effects of her symptoms does not reflect that.  Even so, the court cannot conclude that this one reason was sufficient.

As discussed above, the ALJ indicated that all the reasons he cited – most of which were not clear and convincing – were reasons to discount plaintiff's testimony regarding her back pain and need to lie down after four hours of work.  But the ALJ did not explicitly state he was discounting plaintiff's testimony that she could not sit or stand or walk for more than 15 minutes at a time, and thus the court can at best infer that the evidence her impairments were effectively controlled through medicine was also a reason to discount her testimony regarding her sitting and standing and walking limitations.  This makes sense since plaintiff's symptom testimony all related to her back problems, which the ALJ explicitly discussed.  Yet the ALJ's disregard of plaintiff's testimony concerning how her asserted sitting and standing limitations were accommodated at her part-time job,

as well as the ALJ's finding that her asserted limitations were inconsistent with her reported daily activities when her asserted sitting and standing limitations were not inconsistent, creates doubt as to whether the ALJ considered her testimony regarding her sitting and standing limitations at all.  Under these circumstances, the court cannot conclude the ALJ gave a clear and convincing reason to discount all of plaintiff's testimony that he did in fact discount when formulating her RFC.

## V.

## <u>REMAND IS APPROPRIATE</u>

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  Typically, in accordance with the "ordinary remand rule," the reviewing court will remand to the Commissioner for additional investigation or explanation upon finding error by the ALJ.  *Treichler*, 775 F.3d at 1099.  Nonetheless, it is appropriate for the court to exercise its discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits).  But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition, the court must "remand for further

1    proceedings when, even though all conditions of the credit-as-true rule are

2    satisfied, an evaluation of the record as a whole creates serious doubt that a

3    claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

4         Here, remand is required because the ALJ failed to properly consider

5    plaintiff's subjective symptom testimony and make clear findings in that regard.

6    On remand, the ALJ shall  reconsider plaintiff's subjective complaints and either

7    credit her testimony or provide clear and convincing reasons supported by

8    substantial evidence for rejecting it, including specifying which testimony the ALJ

9    rejects and why. The ALJ shall then proceed through steps two, three, four, and

10   five to determine what work, if any, plaintiff was capable of performing.

11   **VI.**

12   **CONCLUSION**

13        IT IS THEREFORE ORDERED that Judgment shall be entered

14   REVERSING the decision of the Commissioner denying benefits, and

15   REMANDING the matter to the Commissioner for further administrative action

16   consistent with this decision.

17

18

19   DATED: March 30, 2021                    _____

20                                            SHERI PYM
                                             United States Magistrate Judge
21

22

23

24

25

26

27

28